UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN A. CROCKETT                                    CIVIL ACTION

VERSUS                                             NO. 12-1178

MICHAEL J. ASTRUE, COMMISSIONER                    SECTION "I" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Sean A. Crockett, proceeding pro se, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for childhood and adult Supplemental Security Income ("SSI") benefits under Title XVI of the Act. 42 U.S.C. § 402 et seq. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Crockett filed a memorandum in support of his claim. Record Doc. No. 13. Defendant filed a timely reply memorandum. Record Doc. No. 14.

I.     PROCEDURAL HISTORY

Crockett was 17 years old when his mother applied for SSI on his behalf on December 10, 2008, alleging a disability onset date of August 1, 2008, due to an occipital[1] mass brain tumor, seizure disorder, attention deficit hyperactivity disorder and

_____

[1]The occiput or occipital bone is "the back part of the head or skull." Medline Plus (Merriam-Webster, Inc. 2013), http://www.merriam-webster.com/medlineplus/occiput.

dyslexia. (Tr. 61, 143-48, 169). Plaintiff became 18 years old five months after his application was filed. After his application was denied, he filed a timely request for a hearing, which was conducted before an ALJ on January 5, 2011. (Tr. 33-58). The ALJ issued a decision on February 7, 2011, finding that Crockett was not disabled before age 18 under the childhood standards of review and was not disabled under the standards for adults after he attained age 18. (Tr. 10-26). After the Appeals Council denied plaintiff's request for review on March 16, 2012 (Tr. 1-4), the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review.

II.   STATEMENT OF THE ISSUES ON APPEAL

Crockett, who is proceeding pro se, appears to argue that his impairments meet or medically equal the listing for disability as a result of a benign brain tumor. Listing 11.05 for adults and Listing 111.05 for children provide for disability per se based on benign brain tumors. In addition to considering plaintiff's argument that the ALJ erred by failing to find that he meets or medically equals a listing, the court will review the entire record to determine whether substantial evidence supports the ALJ's findings.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

A.   Crockett was 17 years old on the date of his application and on the alleged onset date, and attained age 18 in April 2009.

2

B.      Before attaining age 18, plaintiff had severe impairments consisting of occipital mass, diagnosed as most likely benign; seizure disorder; and attention deficit disorder/attention deficit hyperactivity disorder.

C.      Before attaining age 18, plaintiff's impairments did not meet, medically equal or functionally equal the criteria for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A (adults) or Part B (children). Plaintiff's counsel initially asserted that Crockett's benign brain tumor impairment met Listing 11.05 under Part A and the equivalent Listing 111.05 under Part B, but he withdrew this contention at the hearing. The ALJ in her opinion specifically considered Listing 11.04 for central nervous system disorder of motor function.

D.      Because Crockett did not have an impairment or combination of impairments that resulted in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning, he was not disabled before attaining age 18.

E.      After attaining age 18, plaintiff did not develop any new impairments and continued to have the same severe impairments.

F.      Since attaining age 18, he does not have an impairment or a combination of impairments that meets or medically equals any of the Listings.

G.      Crockett has the residual functional capacity to perform a full range of work at all exertional levels, except he must never climb ladders, ropes or scaffolds and must avoid all exposure to hazards such as heights, machinery with moving parts, and open flames.  In addition, he can only engage in simple, routine, repetitive tasks and unskilled work.

H.      Plaintiff has no past relevant work.  Since attaining age 18, he has been able to perform jobs that exist in significant numbers in the national economy, such as ticket taker, cashier, and counter or rental clerk.

      I.     Crockett has not been disabled as defined in the Act since he attained age 18 through the date of the decision.

(Tr. 14-26).

IV.   <u>ANALYSIS</u>

     A.    <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Loza</u>, 219 F.3d at 393; <u>Spellman</u>, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Id.</u>

4

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Harper v. Barnhart, 176 F. App'x 562, 565 (5th Cir. 2006); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act.  42 U.S.C. § 423(a)(1)(D).  In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process.  This statute applies to all child disability applicants who filed claims on or after August 22, 1996 or whose cases were not finally adjudicated before that date.  Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  <u>Id.</u>
§ 1382c(a)(3)(C)(i).

The Commissioner's final regulations in effect at the time of the ALJ's decision
provide a three-step procedure for evaluating a child's claim of disability.  The first step
is to determine whether the claimant is engaging or has engaged in substantial gainful
activity.  If the answer is "yes," the claimant will be found not disabled.  If the answer
is "no," the second step requires a determination whether the claimant has a medically
determinable severe impairment.  If not, the claimant will be found not disabled.  If the
claimant has such an impairment, the last step is to determine whether the impairment
meets or equals in severity, either medically or functionally, an impairment listed in
Appendix 1, Subpart P, Part 404 of the Commissioner's regulations (the "Listings").  If
the claimant has such an impairment and the impairment meets the duration requirement,
the claimant will be found disabled.  If not, the claimant will be found not disabled.  20
C.F.R. § 416.924 (2010).

An ALJ must assess functional equivalence in children by examining the child's
limitations in six domains:  "(i) Acquiring and using information; (ii) Attending and
completing tasks; (iii) Interacting and relating with others; (iv) Moving about and
manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."
<u>Id.</u> § 416.926a(b)(1).  An impairment or combination of impairments functionally equals

a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain.  Id. § 416.926a(a).

To be considered disabled and eligible for SSI after age 18, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2010).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.     Factual Background

Plaintiff's attorney, Matt Greenbaum, argued at the hearing that either Listing 11.05 or 111.05 applies, depending on whether Crockett was a child or an adult at the time.  He acknowledged that plaintiff was a child for only a few months and was an adult for most of the time period for which he was claiming benefits.  Counsel stated that the listing for benign brain tumors in adults directs an evaluation under either Listing 11.02, 11.03 or 11.04.[3]  He contended that Listing 11.04 presents the closest match to plaintiff's impairments.   Counsel conceded that Listings 11.02 and 11.03 related to seizure disorders do <u>not</u> apply because Crockett "does <u>not</u> have the frequency that those listings call for.  He has seizures from time to time, but <u>not</u> on a monthly or weekly basis."  (Tr. 37) (emphasis added).  At the end of the hearing, counsel admitted that, despite plaintiff's testimony that he experiences dizziness, Crockett does <u>not</u> meet Listing 11.04 because the listing "calls for other problems that he doesn't have."  (Tr. 57).

---

[3]Listings 11.02 and 11.03 apply to types of epilepsy, while Listing 11.04 applies to a central nervous system disorder.

Crockett testified that he cannot work because his seizure medicine, Keppra,[4] makes him very dizzy. He said he cannot last two days without the medication. (Tr. 39-40). He stated that he takes two 500-milligram pills twice a day.

Plaintiff testified that his concentration level is low, he does not comprehend very well and he sometimes gets headaches. He said he cannot stand on his feet for long because he gets dizzy. He stated that the medicine makes him nauseous so that he cannot think for a while and that he loses his motor skills at times.

Crockett stated that he takes his medication every day and it helps prevent the seizures. He said he does not know how often he has seizures because he has them when he is sleeping and that he has seizures if he does not take the medicine for more than two days. (Tr. 40-41). He stated that he gets dizzy and starts forgetting where he is when he misses his night time pill, and that these side effects remind him to take his pills.

Plaintiff testified that he dropped out of school in the eleventh grade because he could not concentrate and his medicine makes him sleep a lot. He said he obtained a GED through an online course. (Tr. 41). He stated that he did his homework when he

---

[4]Keppra (generic name: levetiracetam)
is used to treat several types of seizures in both adults and children with epilepsy. Keppra may cause sleepiness and behavior problems in adults and children. It may also cause coordination problems in adults. Do not stop taking Keppra without first talking with your doctor because this can cause more seizures to occur. Keppra may cause severe drowsiness and dizziness.
PDRHealth (2011 PDR Network, LLC), http://www.pdrhealth.com/drugs/keppra.

was in school, but his attention span is very short, he is easily distracted and he could not stay focused on his homework.  He testified that he was diagnosed with attention deficit hyperactivity disorder, but never took any medication for it.  (Tr. 42-43).  He said he takes only Keppra for seizures.

Crockett stated that he played basketball and football and ran track in high school until he had his first seizure in 2007 and thereafter was prohibited from participating in sports.  (Tr. 43-44).  He said he had friends in school and used to go to parties, but now only goes out with family members because of his condition and his medication.  (Tr. 44-45).  He explained that he sometimes gets dizzy and forgets where he is.  He testified that his doctors told him it was not safe for him to go out, he has to stay inside with people around him and he cannot stay in the house or sleep alone.  He also said he cannot stand on his feet for very long.  (Tr. 45-46).

Plaintiff stated that his medication prevents him from having seizures.  He said it causes headaches and some dizziness when he first takes it, but these side effects go away after five to ten minutes.  (Tr. 46).  He testified that he sleeps a lot during the day and that, on a typical day, he uses the computer, writes music, raps and looks for jobs on the internet.  He said he does light chores sometimes, such as washing dishes and cleaning the tub after he bathes.  (Tr. 47).

Crockett stated that he only spends about 10 minutes trying to write music on the computer and then "I would just get stuck and my brain shuts down.  My body just shuts down and I would just go on and do something else," like watching television, eating, playing a game or taking a nap.  He said that he has never considered taking medication for attention deficit hyperactivity disorder and that his doctors have not suggested that he take medication for it.  He stated that he has not told his doctors about his concentration problems because he only started noticing them in the past five to six months.  Plaintiff testified that he has told his doctors about his occasional dizziness, inability to comprehend and inability to use his motor skills for long.  He said he has been told that he stares into space sometimes and that he is unable to stay with one task at a time.  (Tr. 48-49).  He stated that he has tried to look for a job, but that no one would hire him because of his medical condition.  (Tr. 49-50).

Crockett testified that he is treated by a neurologist and a neurosurgeon in the Charity LSU system.  He said that his neurosurgeon, Dr. McBride, has told him he needs an MRI of his brain to see whether he might need surgery for the tumor.  He thinks the doctors are scared to do the surgery because it would be near vital parts of his brain and might harm him.  (Tr. 50).  He explained again that his medication causes headaches, nausea and dizziness "in the beginning but it all starts to calm down" later.

Plaintiff testified that he deals with stress by trying to write music, eating or sleeping.  He said his memory is terrible and he has short-term memory loss, in that he does not recall what happened the day before when asked about it.  He stated that he needs to lie down during the day because he is sleepy.  He said he sometimes wakes up, eats and then goes back to sleep.  He testified that he usually sleeps about nine hours during the day because he feels fatigued.  (Tr. 51).

Crockett stated that he could not perform an easy job, such as a cashier in a doughnut shop, even if he could sit or stand at will, because he cannot concentrate well and would not be able to count money quickly enough.  (Tr. 52).

C.   Vocational Expert Testimony

The ALJ posed a hypothetical to a vocational expert, Kasey Suggs, of a person of the claimant's age and education with no past relevant work and no exertional limitations, but who must avoid all exposure to hazards, such as moving machinery or heights; cannot climb ladders, ropes or scaffolds; and is limited to simple, routine, repetitive tasks, or unskilled work.  Suggs testified that such a person would be able to perform jobs, such as ticket taker, cashier and counter or rental clerk, all at the light level of exertion.  (Tr. 54-55).  She said such jobs existed in significant numbers in Louisiana and the national economy.

The ALJ posed a second hypothetical of a person with the same characteristics as in the first hypothetical, but who also would require a break every hour to rest or lie down for one to two hours due to dizziness and inability to concentrate.  Suggs testified that such a person would be unable to perform any jobs.  (Tr. 55).

D.     Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 17-25).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.     Plaintiff's Appeal

The ALJ considered Crockett's severe impairments of occipital mass, diagnosed as most likely benign; seizure disorder; and attention deficit disorder/attention deficit hyperactivity disorder under both the childhood and adult standards of review.  At the third step of the sequential evaluation, she found that plaintiff's impairments do not meet, medically equal or functionally equal the criteria of any Listing, and specifically do not meet Listing 11.04.  Plaintiff now appears to argue that he meets the listing for benign brain tumors.

As described above, plaintiff's attorney at the hearing abandoned any argument that Crockett meets Listings 11.02, 11.03 or 11.04, as each is incorporated into Listing

11.05.  Having waived those arguments, plaintiff cannot now challenge the ALJ's determination that he did not meet those listings.  Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (citing Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)); Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009); Latkowski v. Barnhart, 93 F. App'x 963, 971-72 (7th Cir. 2004); Suggs v. Dep't of Health & Human Servs., 30 F.3d 1491, 1994 WL 398166, at *7 (5th Cir. July 19, 1994).

Even if plaintiff had not abandoned those arguments, however, substantial evidence supports the ALJ's findings that Crockett's impairments do not meet, medically equal or functionally equal any listing.  Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009).  "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary."  Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report &

15

recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan

v. Zebley, 493 U.S. 521, 532 (1990); Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994)).

"For a claimant to qualify for benefits by showing that his unlisted impairment,

or combination of impairments, is 'equivalent' to a listed impairment, he must present

medical findings equal in severity to all the criteria for the one most similar listed

impairment." Zebley, 493 U.S. at 5301 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91)

(emphasis in original).

"An impairment that manifests only some of the requisite criteria, no matter how

severely, does not qualify.  If the plaintiff fails to demonstrate the specified medical

criteria, the court will find that substantial evidence supports the ALJ's finding that

listings-level impairments are not present."  Gewin v. Astrue, No. 10-1008, 2011 WL

3924232, at *3 (W.D. La. Aug. 3, 2011), report & recommendation adopted, 2011 WL

3954877 (W.D. La. Sept. 6, 2011) (citing Zebley, 493 U.S. at 530-31; Selders, 914 F.2d

at 620); accord Taylor v. Astrue, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *8

(N.D. Tex. June 27, 2011), report & recommendation adopted, 2011 WL 4091503 (N.D.

Tex. Sept. 14, 2011), aff'd, 706 F.3d 600 (5th Cir. 2012).  Thus, Crockett must identify

specific medical evidence demonstrating that he meets or medically equals all the criteria

of Listing 11.05 for adults or 111.05 for children.

Listing 11.05 for benign brain tumors in adults provides that such conditions should be evaluated under either Listing 11.02, 11.03 or 11.04.  Those three Listings provide as follows:

> 11.02    Epilepsy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; <u>occurring more frequently than once a month in spite of at least 3 months of prescribed treatment</u>.
> A.  Daytime episodes (loss of consciousness and convulsive seizures) or
> B.  Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; <u>occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment</u>.  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.
>
> 11.04    Central nervous system vascular accident.  With one of the following more than 3 months post-vascular accident:
> A.  Sensory or motor aphasia resulting in ineffective speech or communication; or
> B.  Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

20 C.F.R. Part 404, Subpart P, App. 1, §§ 11.02, 11.03, 11.04 (emphasis added).

Similarly, for children, Listing 111.05 provides that benign brain tumors should be evaluated under, as relevant here, Listing 111.02 or 111.03.  These Listings provide:

> 111.02  Major motor seizure disorder.

A.  Convulsive epilepsy.  In a child with an established diagnosis of epilepsy, the occurrence of <u>more than one major motor seizure per month despite at least three months of prescribed treatment</u>.  With:

    1.  Daytime episodes (loss of consciousness and convulsive seizures); or

    2.  Nocturnal episodes manifesting residuals which interfere with activity during the day.

B.  Convulsive epilepsy syndrome.  In a child with an established diagnosis of epilepsy, the occurrence of <u>at least one major motor seizure in the year prior to application despite at least three months of prescribed treatment. And one of the following</u>:

    1.  IQ of 70 or less; or

    2.  Significant interference with communication due to speech, hearing, or visual defect; or

    3.  Significant mental disorder; or

    4.  Where significant adverse effects of medication interfere with major daily activities.

111.03  Nonconvulsive epilepsy.  In a child with an established seizure disorder, the occurrence of <u>more than one minor motor seizure per week</u>, with alteration of awareness or loss of consciousness, <u>despite at least three months of prescribed treatment</u>.

<u>Id.</u> §§ 111.02, 111.03 (emphasis added).

As plaintiff's attorney conceded at the hearing and as the medical evidence makes clear, Crockett's seizure disorder does not meet the frequency criteria of Listing 11.02 or 11.03.  In addition, as the ALJ found, there is no evidence that plaintiff meets the criteria of either Paragraph A or B of Listing 11.04.

18

The first medical documentation of plaintiff's impairments is of a grand mal seizure[5] on August 1, 2008.  Crockett was seen on that date in the emergency room of Children's Hospital in New Orleans, where he was diagnosed with a seizure disorder and an occipital mass, for which his doctor stated there was no urgent need for resection. Plaintiff was started on 1000 milligrams of Keppra twice a day.  (Tr. 242-43).  The dosage level of plaintiff's Keppra never changed from his first diagnosis in August 2008 through the last medical record on October 13, 2010.  An electroencephalogram on September 5, 2008 was normal.  (Tr. 261-62).

Plaintiff was admitted to Children's Medical Center in Dallas, Texas in January 2009 for removal of the brain tumor.  The surgery was cancelled on its scheduled date because of a lack of bed space in the neurosurgical intensive care unit.  (Tr. 261-79, 443). There is no medical evidence that the surgery was ever rescheduled.

Crockett had four more medically documented seizures on November 21, 2008; August 20, 2009; October 9, 2009; and July 31, 2010.  His treating physicians each time

_____

[5]A grand mal seizure is described as "severe epilepsy characterized by tonic-clonic seizures; also a tonic-clonic seizure."  Tonic-clonic means "relating to, marked by, or being a generalized seizure that is initially tonic and then becomes clonic and is characterized by the abrupt loss of consciousness." Tonic and clonic relate to tonus and clonus.  Tonus is "a state of partial contraction that is characteristic of normal muscle, is maintained at least in part by a continuous bombardment of motor impulses originating reflexly, and serves to maintain body posture."  Clonus is "a series of alternating contractions and partial relaxations of a muscle that in some nervous diseases occurs in the form of convulsive spasms involving complex groups of muscles and is believed to result from alteration of the normal pattern of motor neuron discharge."  Medline Plus, http://www.merriam-webster.com/medlineplus.

noted that the seizures had been caused by plaintiff's noncompliance with taking his medication as prescribed.  (Tr. 259-60, 384, 487, 578, 584).

Based on a review of the medical evidence, a medical consultant for the Commissioner concluded on May 11, 2010 that plaintiff's seizures were not at listing level severity, that he experienced seizures only when he ran out of medication and that he did not have any seizures while on his medication.  (Tr. 419).

Crockett was admitted to Children's Hospital in New Orleans from July 31 to August 2, 2010 because of a seizure he had on July 31.  His treating neurosurgeon stated that plaintiff's occasional seizures were likely related to his noncompliance with medications and that he was now back at baseline with his home dosage of Keppra.  The doctor noted that the size of plaintiff's occipital mass had not changed between August 2008 and August 2009, when the last imaging was done, and that the mass was likely benign.  The neurosurgeon recommended that Crockett undergo a new brain MRI a few weeks after he was discharged.  (Tr. 584).  Plaintiff's treating physician stated in his hospital discharge summary that plaintiff had not had any seizures while on medication. (Tr. 583).  An electroencephalogram on August 19, 2010 was normal.  (Tr. 499).  None of these opinions are contradicted by any other medical evidence.

A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling.  Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir.

2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988), abrogated on other grounds by Sullivan v. Zebley, 493 U.S. 521, 527 (1990)); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Acosta v. Astrue, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012); Quintanilla v. Astrue, 619 F. Supp. 2d 306, 321 (S.D. Tex. June 27, 2008); see also Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000) (affirming denial of benefits when, "[a]lthough the medical records reflect that Bolton did experience a single episode of severe depression, her depression responded to treatment and had apparently resolved by the time Bolton was examined by Dr. Greer.").

The evidence therefore substantially supports the ALJ's findings that plaintiff's seizure disorder was under control when he took his medication and that he does not have seizures with the required frequency, despite at least three months of prescribed treatment, to meet or medically equal adult Listing 11.02 or 11.03 or childhood Listing 111.02 or 111.03.  In addition, there is no evidence that Crockett meets or medically equals either the Paragraph A or B criteria of Listing 11.04.

The evidence, which was accurately summarized and cited by the ALJ, also substantially supports her findings that, during the five months before he turned 18,

Crockett did not have an impairment or combination of impairments that resulted in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning.  His condition therefore did not functionally equal a listed impairment and did not establish childhood disability.  20 C.F.R. §§ 416.926a(b)(1).

Finally, the record substantially supports the ALJ's conclusion that plaintiff has the residual functional capacity to perform light work with the restrictions noted in her opinion and that such work is available in significant numbers in the Louisiana and national economy.  Because Crockett can perform such work, he is not disabled.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this _____18th_____ day of April, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.